# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ASSOCIATION OF AMERICAN MEDICAL COLLEGES; THE AMERICAN ASSOCIATION OF COLLEGES OF PHARMACY; THE ASSOCIATION FOR SCHOOLS AND PROGRAMS OF PUBLIC HEALTH; THE CONFERENCE OF BOSTON TEACHING HOSPITALS, INC.; and GREATER NEW YORK HOSPITAL ASSOCIATION, <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL INSTITUTES OF HEALTH; MATTHEW MEMOLI, M.D., M.S., in his official capacity as Acting Director of the National Institutes of Health; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; and DOROTHY FINK, in her official capacity as Acting Secretary of the U.S. Department of Health and Human Services, <br><br> Defendants. | 1: 25-cv-10340 |

### PLAINTIFFS' JOINDER IN THE ATTORNEYS GENERALS' *EX PARTE* EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER

Plaintiffs Association of American Medical Colleges ("AAMC"), the American Association of Colleges of Pharmacy ("AACP"), the Association of Schools and Programs of Public Health ("ASPPH"), the Conference of Boston Teaching Hospitals, Inc. ("COBTH"), and Greater New York Hospital Association ("GNYHA" and together with AAMC, AACP, ASPPH, and COBTH, "Plaintiffs") hereby join in the *Ex Parte* Emergency Motion for Temporary Restraining Order (the "AG Motion") filed by the State Attorneys General in the related action before this Court captioned *Commonwealth of Massachusetts, et al. v. National Institutes of Health, et al.*, Case No. 1:25-cv-10338 (the "AG Action") regarding the Supplemental Guidance

to the 2024 NIH Grants Policy Statement: Indirect Cost Rates, issued by the Office of the Director

of the National Institutes of Health on February 7, 2025 (the "Rate Change Notice"), and urge the

Court to extend its order to prohibit enforcement of the Rate Change Notice with respect to

institutions nationwide that would be negatively impacted by that Rate Change Notice.[1]

### *Plaintiffs Have Standing*

1.      "Article III's case-or-controversy requirement is satisfied if ***at least one party*** has

standing." *Hernández-Gotay v. United States*, 985 F.3d 71, 78 (1st Cir. 2021) (emphasis added)

(citing *Bowsher v. Synar*, 478 U.S. 714, 721 (1986)).  Thus, while each of AAMC, AACP, ASPPH,

COBTH, and GNYHA has standing, in the interest of judicial economy, this section of Plaintiffs'

application focuses primarily on AAMC's standing.

2.      AAMC's members include 159 accredited medical schools and more than 490

teaching hospitals.  *See* Compl. ¶ 16; Declaration of Heather H. Pierce being filed as Exhibit A

hereto ¶ 3.  AAMC represents members found in and serving patients in all 50 states.  *See* Compl.

¶ 16; Ex. A ¶ 3.  AACP currently has 143 member institutions across the country, and several in

Massachusetts, including the Massachusetts College of Pharmacy and Health Sciences, with

campuses in Boston and Worcester, Northeastern University Bouvé College of Health Sciences

School of Pharmacy in Boston, and Western New England University in Springfield.  *See* Compl.

¶ 18.  ASPPH represents 151 accredited institutions in the United States, including seven in

Massachusetts.  *See id.* ¶ 19.  COBTH is a section 501(c)(6) nonprofit coalition of twelve Boston-

area teaching hospitals incorporated and headquartered in Massachusetts.  *See id.* ¶ 20.  GNYHA

is comprised of nearly 280 member hospitals, health systems, and continuing care facilities in the

---

[1] Unless otherwise noted, all defined terms herein shall have the same meaning as in the complaint being filed herewith (ECF 1, the "Complaint").

metropolitan New York area, throughout New York State, and in New Jersey, Connecticut, and Rhode Island.  *See id.* ¶ 21.

3.      AAMC has standing to represent the interest of its members as "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023) (quoting *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977)).

4.      More specifically, each of its 159 accredited medical school members is an Institute of Higher Education ("IHE"), which will have its research funding slashed immediately if the Rate Change Notice is allowed to take effect.  *See* Compl. ¶ 16; Ex. A ¶¶ 3-6.  Likewise, its more than 490 teaching hospital members—hospitals that are responsible for training this country's future doctors—also engage in a substantial amount of cutting-edge research that leads to lifesaving medical breakthroughs.  *See* Compl. ¶ 17; Ex. A ¶¶ 3-6.  If the Rate Change Notice goes into effect, these hospitals will have to curtail, if not forego, that research because future funding will be insufficient to cover the costs of that research.  *See* Compl. ¶¶ 43-46; Ex. A ¶¶ 7-9.

5.      As the leading association for medical colleges and teaching hospitals, AAMC advocates tirelessly for the research funding necessary to permit these institutions to carry out a significant part of their mission—that is to ensure that our medical students receive the world's best medical training and have exposure to the cutting-edge research that will continuously improve the quality of healthcare in the United States.  Its participation in this lawsuit is but one example of AAMC furthering that mission on behalf of its members.

6.    Because this case is at core an APA action challenging unlawfully issued Rate Change Notice that if allowed to take effect would negatively impact all of AAMC's members alike, neither the claims asserted, nor the relief sought requires the participation of its individual members in the lawsuit.  *See Conservation Law Found., Inc. v. Jackson*, 964 F. Supp. 2d 152, 160 (D. Mass. 2013) (no need for members to participate where "fundamental question" at issue was "whether the EPA acted arbitrarily, capriciously, or contrary to law [and] plaintiffs d[id] not seek damages on behalf of individuals, but rather declaratory and injunctive relief").

### There is a High Likelihood that Plaintiffs' Claims Will Succeed on the Merits

7.    The claims that Plaintiffs assert in this case to a significant extent mirror the claims asserted by the State Attorneys' General in the AG Action.

8.    Plaintiffs' claims are therefore equally likely to succeed on the merits, and Plaintiffs incorporate by reference the arguments advanced by the Attorneys General on this point in the memorandum of law in support of the AG Motion.  *See* AG Action, ECF 12 (the "AG Brief") at 14-24.

### Plaintiffs' Members will Suffer Irreparable Harm if the Rate Change Notice is Not Enjoined

9.    Plaintiffs submit this Joinder to make two separate and additional points in support of the Request for a Temporary Restraining Order.  *First*, if the Rate Change Notice is allowed to take effect, Plaintiffs' members will suffer immediate and irreparable financial injury.  And, *second*, that harm will occur nationwide—negatively impacting AAMC's members which care for patients in all 50 states, including COBTH's members in Massachusetts and GNYHA's in the New York area.

10.    "Where a plaintiff stands to suffer a substantial injury that cannot adequately be compensated by an end-of-case award of money damages, irreparable harm exists."  *Rosario-*

*Urdaz v. Rivera-Hernandez*, 350 F.3d 219, 222 (1st Cir. 2003).  The First Circuit has "recognized that some economic losses can be deemed irreparable." *Vaqueria Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 484 (1st Cir. 2009).  Such circumstances arise "where no adequate remedy at law exists for a plaintiff to recover its alleged damages." *New Hampshire Hosp. Ass'n v. Burwell*, 2016 WL 1048023, *17 (D.N.H. Mar. 11, 2016) (citing *Rosario-Urdaz*, 350 F.3d at 222).  Courts have also held repeatedly that where damages are unrecoverable, they may constitute irreparable harm regardless of "the amount of the loss." *Regeneron Pharm., Inc. v. U.S. Dep't of Health & Human Servs.*, 510 F. Supp. 3d 29, 39 (S.D.N.Y. 2020) (finding irreparable harm for APA claim and citing *Odebrecht Const., Inc. v. Sec'y, Fla. Dep't of Transp.*, 715 F.3d 1268, 1289 (11th Cir. 2013)); *Chamber of Commerce v. Edmondson*, 594 F.3d 742, 770–71 (10th Cir. 2010); *Iowa Utilities Bd. v. FCC*, 109 F.3d 418, 426 (8th Cir. 1996)).

11.    A "plaintiff cannot recover money damages for an APA violation." *New Hampshire Hosp. Ass'n*, 2016 WL 1048023 at *18; *see also Concord Hosp., Inc. v. NH Dep't of Health & Hum. Servs.*, 2024 WL 3650089, at *24 (D.N.H. Aug. 5, 2024) (finding irreparable harm where "state plan provide[d] no mechanism for recovering recouped or retained . . . payments" and "sovereign immunity would bar plaintiff from obtaining a damages award of any recouped or retained . . . funds") (citing *Rosario-Urdaz*, 350 F.3d at 222).  Losses arising from the inability to obtain government reimbursement constitute irreparable harm.  *See Alcresta Therapeutics, Inc. v. Azar*, 755 F. App'x 1, 5 (D.C. Cir. 2018) (reversing denial of preliminary injunction).

12.    To pay for the important medical research that is ongoing everyday at Plaintiffs' member institutions, institutions must continuously draw down on the NIH grants that were made to them—in some cases many years ago—and use these funds that they have budgeted for, and rely on to, for example, pay the salaries of people that make this important research possible.  *See*

Compl. ¶ 43; Ex. A ¶ 7.  Any request to draw down funding that is made by a member institution

at the unlawfully mandated 15% rate instead of the institution's higher negotiated rate—the rate

that the member institution agreed to with NIH in advance of taking on the grant and undertaking

the research—results in an immediate and irreparable loss of sustaining research funding for that

institution.  *See* Compl. ¶ 43; Ex. A ¶ 6.

13.    Because Plaintiffs' claims arise under the APA and are otherwise brought against

federal officers acting in their official capacity, *see* Compl. ¶¶ 47-74, monetary damages are

unavailable in this case.  Thus, Plaintiffs' member institutions will sustain immediate and

irreparable losses unless a temporary retaining order is entered.

14.    Because the reach of AAMC's members is nationwide, and the Rate Change Notice

will adversely impact AAMC's members alike, the temporary restraining order that issues should

apply in all 50 states.

## CONCLUSION

For the foregoing reasons, and all of the reasons set forth in the AG Brief, Plaintiffs

respectfully request that this Court enter an order temporarily restraining HHS and NIH from

applying the Supplemental Guidance to impacted institutions nationwide.

Respectfully submitted,

**ROPES & GRAY LLP**

*/s/ John P. Bueker*
John P. Bueker (BBO #636435)
Ropes & Gray LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
(617) 951-7951
John.bueker@ropesgray.com

Douglas H. Hallward-Driemeier (BBO #627643)
Stephanie A. Webster (*pro hac vice* forthcoming)
Ropes & Gray, LLP
2009 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
(202) 508-4859
Douglas.hallward-driemeier@ropesgray.com
Stephanie.webster@ropesgray.com

*Counsel for Plaintiffs*

## LOCAL RULE 7.1 CERTIFICATE

I, John Bueker, certify that on February 10, 2025, at approximately 3:30 p.m., I contacted the following individuals at the U.S. Department of Justice by electronic mail to provide notice of this joinder:

Eric J. Hamilton
Deputy Assistant Attorney General, Federal Programs Branch
eric.hamilton@usdoj.gov

Alex Haas
Co-Director. Federal Programs Branch
alex.haas@usdoj.gov

Diane Kelleher
Co-Director, Federal Programs Branch
diane.kelleher@usdoj.gov

John Griffiths
Co-Director, Federal Programs Branch
john.griffiths@usdoj.gov

Rayford Farquhar
Chief, Defensive Litigation. Civil Division
U.S. Attorney's Office for the District of Massachusetts
rayford.farguhar@usdoj.gov

Plaintiffs have not yet had an opportunity to meet and confer with Defendants' counsel, but are proceeding with this filing given the need for prompt relief. as set forth in the accompanying memorandum of law.

/s/ John P. Bueker
John P. Bueker (BBO #636435)
Ropes & Gray LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
(617) 951-7951
John.bueker@ropesgray.com

*Counsel for Plaintiffs*